# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| In Re: | |
|---|---|
| **SAMUEL R. DAVIS and NEVA L. DAVIS,** | **Bankruptcy Case No. 11-40242-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Aaron Tolson, TOLSON LAW OFFICES, Ammon, Idaho, Attorney for Debtors.

Jim Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Trustee.

## Introduction

Chapter 7[1] debtors Samuel and Neva Davis ("Debtors") own and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the

MEMORANDUM OF DECISION - 1

live in a home in St. Anthony ("St. Anthony Property"), but, in their bankruptcy case, claimed a homestead exemption in a home they co-own with others located in Shoup, Idaho ("Shoup Property"). Chapter 7 trustee R. Sam Hopkins ("Trustee") objected to Debtors' exemption claim in the Shoup Property arguing that Debtors have not properly abandoned the homestead exemption he claims exists in the St. Anthony Property. In addition, Trustee asserts the Shoup Property homestead declaration is technically deficient. Therefore, even if Debtors could claim an exemption in the Shoup Property, Trustee argues an exemption was never properly established for that property.

A hearing on Trustee's objection was held November 22, 2011, and, after hearing from the parties, the Court took the issues under advisement. After considering the evidence, testimony, the parties' submissions, and applicable law, this Memorandum sets forth the Court's findings of fact and conclusions of law. Rule 7052, 9014.

---

Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 2

## Facts[2]

Debtors purchased the Shoup Property in the 1980s; Samuel[3] lived on that property for at least three to four years.  By 2000, however, when Debtors filed a prior bankruptcy, they had acquired and lived in a home in Monteview ("Monteview Property").  Exh. 206.  In their 2000 bankruptcy petition, Debtors listed the Monteview Property address as their street and mailing address, and indicated Jefferson County was their "County of Residence."  *Id.*

In the weeks before Debtors filed their 2000 petition, they executed a Declaration of Homestead for the Shoup Property ("Homestead Declaration").  Exh. 205.  In that document, executed under oath, Debtors declared four things.  First, they represented that the Shoup Property was their homestead "pursuant to Idaho Code § 55-1004."  *Id.*  Second, while they admitted to "temporarily residing away" from the Shoup Property,

---

[2] Except where noted, these facts were derived from the testimony given at the November 22, 2011, hearing on Trustee's objection.

[3] References to Debtors' first names is solely for the clarity of this decision; no disrespect is intended.

MEMORANDUM OF DECISION - 3

they declared an intent to reside on the property "as soon as [they] are able." *Id.* Third, the declaration included a legal description for the property of "Lot 3, division #1, Amarlu Subdivision to Lemhi County, Idaho."[4] *Id.* Finally, the Homestead Declaration indicates there are no encumbrances against the Shoup Property, and that "[t]he actual cash value of [Debtors'] homestead is approximately $25,000." *Id.* The Homestead Declaration was signed by both Debtors on May 8, 2000, and includes a jurat, whereby a notary public certified Debtors were "[s]ubscribed and sworn to before [him]" on May 5, 2000.[5] *Id.*

There is no evidence that Debtors filed a declaration of abandonment as to any homestead or exemption associated with the Monteview Property

---

[4] Samuel testified this is the Shoup Property's correct legal description. Variations on the legal description appear throughout the record. For example, Debtors' 2011 bankruptcy schedules identify the property as "Ammloy Subdivision #3," and "Amerlou Subdivision #3;" Debtors' 2000 bankruptcy schedules describe the property as "Lot 3, Division #1 of Amorlu Subdivision;" at the hearing, Samuel testified he believed the subdivision's name is spelled "A-m-a-r-l-o-u."

[5] No explanation was elicited at the hearing to explain why the Debtors' signatures are dated May 8, while the jurat is dated May 5.

MEMORANDUM OF DECISION - 4

when they filed the Homestead Declaration.

In 2004, Debtors built, and moved into, the St. Anthony Property. They have lived there ever since, while occasionally visiting the Shoup Property, the ownership of which they now share with two other parties.[6] While Debtors now own only a one-third interest in the Shoup Property, they indicate it has always been their intent to eventually retire there. Pursuant to a verbal agreement with the other owners, Debtors apparently have an option to buy back full ownership of the Shoup Property when they are ready to retire.

In preparing to file their 2011 bankruptcy petition, Debtors completed a Homeowner's Exemption Application for submission to county tax authorities.[7] In that application, Debtors indicate they began to occupy the Shoup Property as their "primary residence" on February 22,

---

[6] Debtors currently only own a one-third interest in the Shoup Property. Samuel indicates he sold the other two-thirds interest to his friends because they often visited the property.

[7] The particular form completed by Debtors is intended to clarify a party's exemption for Idaho real property tax purposes under Idaho Code § 63-602G.

MEMORANDUM OF DECISION - 5

2011.  At the hearing on Trustee's objection, Samuel clarified the Debtors still spend the bulk of their time at the St. Anthony Property; he completed the Homeowner's Exemption Application because he assumed it was required prior to filing for bankruptcy.  Samuel testified that, by completing the application, Debtors intended to clarify they no longer claimed a homeowner's tax exemption on the St. Anthony Property.

Debtors did not record an updated homestead declaration for the Shoup Property prior to their 2011 filing, and they did not file a declaration of abandonment for any homestead exemption that may have arisen as to the St. Anthony Property.

Debtors filed their bankruptcy petition on March 3, 2011, and claimed a $100,000 exemption in the Shoup Property.  Trustee objected to the homestead exemption claim.

## Discussion

When a debtor files a bankruptcy petition, a bankruptcy estate is automatically created, which includes all of the debtor's interests in property at the commencement of the case.  § 541(a)(1). While all of a

MEMORANDUM OF DECISION - 6

debtor's property initially becomes property of his estate, he may exempt certain property, or its value, from that estate. § 522(b)(1); *Schwab v. Reilly*, 130 S.Ct. 2652, 2661–62 (2010).

The Bankruptcy Code defines which exemptions are available to any particular debtor. *See* § 522(b)(2). At the same time, the Code allows states to opt out of its exemption scheme. *Id.* Idaho has opted out, and Idaho bankruptcy debtors must look to the State's exemption laws to determine which property may be exempted from their bankruptcy estates. *Id.*; Idaho Code § 11-609. Among Idaho's exemption statutes is a "homestead exemption," which allows a debtor to exempt up to $100,000 in a qualified homestead's value. Idaho Code § 55-1003.

Under Idaho's homestead exemption statutes, there are two methods for establishing the exemption. *See* Idaho Code § 55-1004.[8] First,

---

[8] Idaho Code § 55-1004 provides:

> (1) Property . . . constitutes a homestead and is automatically protected by the exemption . . . from and after the time the property is occupied as a principal residence by the owner or, if the homestead

(continued...)

MEMORANDUM OF DECISION - 7

if an owner occupies property as a "principal residence," the property is "automatically" considered his or her homestead, and gains the protection of the homestead exemption. Idaho Code § 55-1004(1). Alternatively, a debtor may establish and claim an exemption in property in which he or she is currently not residing by recording a "declaration of homestead" with the county recorder where the property is located. Idaho Code §§ 55-1004(1), (2). If electing this second approach, and if the owner also owns and occupies a different property as a residence, the owner must also

---

[8](...continued)
    is unimproved or improved land that is not yet occupied as a homestead, from and after the declaration or declarations required in this section are filed for record . . . .
    (2) An owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located. However, if the owner also owns another parcel of property on which the owner presently resides or in which the owner claims a homestead, the owner must also execute a declaration of abandonment of homestead on that other property and file the same for record with the recorder of the county in which the land is located.

MEMORANDUM OF DECISION - 8

record a "declaration of abandonment of homestead" for the property in which he resides. Idaho Code § 55-1004(2).

Assuming Debtors' Homestead Declaration met the technical requirements to establish an exemption in the Shoup Property in 2000, the question in this case is, what effect did the Debtors' establishment of the St. Anthony Property as their principal residence in 2004 have on the Shoup Property homestead exemption? In other words, did Debtors' relocation to St. Anthony establish an automatic exemption in that property that would trump the exemption by declaration previously established for the Shoup Property?

There are several ways in which an established homestead exemption may terminate. First, a property owner may file a declaration of abandonment of homestead with the county recorder where a homestead is located. *See* Idaho Code § 55-1004(2). Second, a presumption of abandonment arises if a property owner vacates a homestead for a continuous period of at least six months, and does not record a declaration of nonabandonment. Idaho Code § 55-1006. Third, where a debtor claims

MEMORANDUM OF DECISION - 9

a homestead exemption in property in which he is residing, Idaho's statutes limit the exemption to his "principal residence." Idaho Code § 55-1004(1); *In re Capps*, 438 B.R. 668, 674 (Bankr. D. Idaho 2010). Thus, when an Idaho debtor establishes a new principal residence, the new residence becomes the debtor's homestead, protected by the exemption, and any prior residency-based exemption is extinguished. Idaho Code § 55-1004(1); *In re Capps*, 438 B.R. at 674.

In this case, Debtors did not record a declaration of abandonment of homestead as to the Shoup Property when they moved to the St. Anthony house. The presumption of abandonment only applies to an automatic homestead, and not to one created through a declaration.[9] *See* Idaho Code

---

[9] Per the exemption statutes, a homestead exemption by declaration must be on property in which the owner does not reside. Idaho Code §§ 55-1004(1) and (2). The automatic homestead exemption is not implicated because the owner does not reside on the property, and no exemption arises unless he files a declaration for such property. *Id.* The presumption of abandonment, however, only applies where a homestead has been "vacate[d]" by its owner for a period of at least six months. Idaho Code § 55-1006. An owner cannot "vacate" a homestead in which he has not resided. Thus, where an exemption arises due to an owner's declaration, and the homestead is not his residence, the presumption of abandonment does not apply.

MEMORANDUM OF DECISION - 10

§ 55-1006. While the establishment of a new principal residence gives rise to an automatic exemption that trumps any previous residency-based exemption, the statutes and case law are less clear as to whether the new automatic exemption would also negate an existing exemption by declaration.

On the one hand, the automatic homestead exemption statute indicates property is a homestead, automatically protected by the exemption, "from and after the time the property is occupied as a principal residence by the owner." Idaho Code § 55-1004(1). This statutory language arguably indicates that a new, residence-based exemption will arise in a newly occupied property, regardless of the manner in which a previous homestead was created. *Id.*

At the same time, the only apparent mechanism for extinguishing an exemption by declaration is to record a declaration of abandonment of that homestead. Once recorded, a declaration of homestead notifies the world, including potential creditors, that its owner claims the homestead as exempt. *See Matheson v. Harris*, 572 P.2d 861, 864 (Idaho 1977) (indicating

MEMORANDUM OF DECISION - 11

the primary purpose of Idaho's recording statutes is to provide notice of the interests claimed in real property). Once a property owner has a properly established a homestead exemption, he or she cannot claim a homestead exemption in any other property; an owner may have only one homestead exemption, in only one property, at a time. *In re Antonie*, 447 B.R. 610, 613–14 (D. Idaho 2011). Thus, if an owner with a valid exemption by declaration later wishes to take advantage of the "automatic" homestead in a newly established principal residence, he must arguably first record a declaration of abandonment as to his homestead by declaration. *See id.* Otherwise, lest the public be misled, the homestead by declaration continues in effect, and the second exemption is not established. *See id.*

Of course, none of this matters if Debtors did not correctly establish the homestead by declaration for the Shoup Property in 2000. In deciding whether they did, which Trustee contests, the homestead exemption statutes are to be liberally construed in Debtors' favor. *Thorp v. Gugino*, 09.3 I.B.C.R. 90, 92 (D. Idaho 2009). At the same time, where the statutes

MEMORANDUM OF DECISION - 12

have clear requirements, a homestead exemption cannot be established unless those requirements have been met. *Id.*; *In re Gardner*, 417 B.R. 616, 622 (Bankr. D. Idaho 2009).

One of the homestead statute's clear requirements is that, where an owner desires to declare an exemption in property on which he or she does not currently reside, the owner must file both a declaration of homestead, and, if he or she presently owns and occupies other property, a declaration of abandonment of homestead for the residence property. *See* Idaho Code §§ 55-1004(1), (2); *In re Gardner*, 417 B.R. at 622. If an owner records a homestead declaration for unoccupied property, but does not record a declaration of abandonment in occupied property, the homestead by declaration is not valid. *In re Gardner*, 417 B.R. at 622.

When Debtors recorded their Homestead Declaration in 2000, they owned and occupied the Monteview Property. Exh. 206. While they recorded the Homestead Declaration, they did not record a declaration of abandonment for the Monteview Property. Thus, they did not meet the specific technical requirements of the homestead exemption statute, and

MEMORANDUM OF DECISION - 13

did not establish an exemption by declaration in the Shoup Property.

Another clear statutory requirement of Idaho's homestead exemption statutes is that, when establishing an exemption by declaration, the declaration "must be acknowledged in the same manner as a grant of real property is acknowledged." Idaho Code § 55-1004(5).[10] Idaho's real property statutes prescribe the form of notary certificate required to properly acknowledge a transfer of real property. Idaho Code § 55-710. The language required in such a certificate is much more extensive than the jurat included in Debtors' recorded Homestead Declaration. Because their Homestead Declaration does not contain a sufficient acknowledgment, it does not satisfy the clear statutory requirements to establish a homestead via declaration, and Debtors' Homestead Declaration was, for a second reason, ineffective to establish an exemption in that manner.

## Conclusion

---

[10] Idaho Code § 55-1004(5) was enacted in 1989, and was applicable at the time Debtors' executed and recorded their Homestead Declaration. *See* Idaho S.L. 1989, ch. 371, § 2, p. 933.

MEMORANDUM OF DECISION - 14

Debtors did not meet the technical requirements to properly establish a homestead exemption by declaration for the Shoup Property in 2000. Thus, Debtors may not properly claim a homestead exemption in that property. Trustee's objection is, therefore, sustained.

A separate order will be entered.

Dated: January 17, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 15