# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**SAMUEL R. DAVIS and**
**NEVA L. DAVIS,**

               **Debtors.**

**Bankruptcy Case
No. 11-40242-JDP**

_____

# MEMORANDUM OF DECISION
_____

**Appearances:**

    Aaron Tolson, TOLSON LAW OFFICES,Ammon, Idaho Attorney
for Debtor.

    Jim Spinner, SERVICE & SPINNER, Pocatello, Idaho Attorney for
Chapter 7 Trustee.

### *Introduction*

    Eighteen days after the Court sustained an objection by Chapter 7[1]

---

    [1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

trustee R. Sam Hopkins ("Trustee") to the homestead exemptions claimed

by debtors Samuel and Neva Davis ("Debtors"), Debtors filed a motion to

extend the time to appeal that decision.  Trustee objected to Debtors'

motion to extend time, asserting that, because Debtors did not file their

motion within the fourteen-day window for filing a timely notice of

appeal, their late motion to extend time was improper unless they could

demonstrate the delay in filing the motion was due to "excusable neglect,"

which, Trustee argued, it was not.

A hearing on Debtors' motion was held April 10, 2012, after which

the parties were given additional time to brief the issues.  Having now

considered the record, the parties' submissions, and applicable law, this

Memorandum sets forth the Court's findings of fact and conclusions of

law and disposes of the pending motion.  Rule 7052, 9014.

### Facts[2]

---

[2]  On January 17, 2012, the Memorandum of Decision concerning Trustee's
objection to Debtors' homestead exemption ("January 17 Decision") was filed.
Dkt. No. 34.  These facts, unless otherwise noted, are taken from the January 17
Decision, as supplemented by counsel's undisputed representations made in
(continued...)

MEMORANDUM OF DECISION - 2

Debtors own and live in a home in St. Anthony, but, in their chapter 7 case, claimed a homestead exemption in a different property they own with others located in Shoup, Idaho ("Shoup Property"). To support their exemption claim, Debtors relied on a declaration of homestead executed in connection with their previous bankruptcy case filed in 2000.

Trustee objected to Debtors' claimed homestead exemption, and, after appropriate proceedings, the Court concluded the 2000 homestead declaration was deficient in two ways. January 17 Decision at 13–14, Dkt. No. 34. First, in spite of the Idaho Code § 55-1004(2) requirement that, when declaring a homestead in unoccupied land, a debtor must also execute and file a declaration of abandonment of homestead if the debtor at the time owns and resides in other property, Debtors did not record a declaration of abandonment for a home they owned in Monteview where they owned lived at the time. *Id.* Second, the 2000 homestead declaration was not acknowledged in the same manner as a conveyance of real

---

[2](...continued)
briefs and at the hearing on this motion.

MEMORANDUM OF DECISION - 3

property, as required by Idaho Code § 55-1004(5).  *Id.*  While Debtors'

homestead declaration contained a jurat, the language in the jurat did not

comply with the form of notary certificate required to properly

acknowledge a transfer of real property.  *See* Idaho Code § 55-710; January

17 Decision at 14, Dkt. No. 34.  The Court therefore sustained Trustee's

objection and disallowed Debtors' homestead exemption claim; its

Memorandum of Decision and Order were entered on January 17, 2012.

Dkt. Nos. 34, 35.

     Debtors, through their counsel, Aaron Tolson ("Tolson"), made an

offer to Trustee to purchase the bankruptcy estate's interest in the Shoup

Property two days later.  They assert that, at that time, they were not aware

of the Court's January 17 Decision.  Affidavit of Sam Davis, Dkt. No. 44-1.[3]

---

     [3] This assertion, it seems, is an odd one.  Why would Debtors offer to
purchase an interest in property that, for all they knew, was protected from the
reach of Trustee by a valid homestead exemption?  Mr. Davis' affidavit claiming
Debtors did not know of the January 17 Decision when they offered to purchase
the Shoup Property from Trustee was also contradicted by Tolson at the April 10
hearing on Debtors' motion.  Tolson's more credible account of the facts was that
when he informed Debtors about the cost of an appeal of the January 17
Decision, they collected money from family members to make the offer to
                                              (continued...)

MEMORANDUM OF DECISION - 4

Tolson, however, knew of the Court's decision when the offer was made.

Trustee rejected Debtors' offer on January 23, 2012, and Debtors admit they had been advised of the January 17 Decision by that date. *See id.* At the same time, Debtors assert they were waiting to read the Court's decision before deciding whether to appeal. *Id.* Tolson claims he put a copy of the January 17 Decision "in his assistant's box to be mailed on the same day he called to advise [Debtors] of the Order, which in the ordinary course would have gone out." Debtors' Brief in Support of Motion at 1, Dkt. No. 44. The copy of the Court's decision, however, apparently never reached Debtors, who claim that, because they did not receive a copy the decision to read, they did not file a notice of appeal within fourteen days of the decision's entry.

Debtors contacted Tolson about the decision on February 3, 2012,

---

[3](...continued)

Trustee, and that Debtors had decided not to appeal the decision at the time. This version of events is also consistent with Debtors' January 19 offer to purchase the estate's interest in the Shoup Property, which offered Trustee a specified amount "from family help today," with more to be provided at a later date. *See* Exhibit A to Affidavit of Trustee, Dkt. No. 46.

MEMORANDUM OF DECISION - 5

and Tolson emailed them a copy of the decision, telling them that, "at this point[, they] only had a few days to try to initiate anything."[4]  *Id.*  Debtors decided to appeal the decision on February 4; Tolson filed the motion to extend time to appeal that same day.

Tolson's explanation for the delay in filing the motion was that there was "an apparent mail issue."  Debtors' Brief in Support of Motion at 1, Dkt. No. 44.  Debtors, for their part, assert they did not understand there was a limited, fourteen-day period within which to file a notice of appeal.  Affidavit of Sam Davis, Dkt. No. 44-1.

Trustee, on the other hand, argues that Debtors clearly became aware of the adverse January 17 Decision within the deadline for filing a notice of appeal, as demonstrated by their offer to purchase the estate's interest in the Shoup Property from him.  Also, even if Tolson did not

---

[4]  It is unclear whether Tolson was advising his clients as to their ability to file a notice of appeal, or to file a motion to extend time.  As of February 3, 2012, it was too late for Debtors to file a notice of appeal; yet, they had eighteen days remaining within which to move for an extension of time to file a notice of appeal.  At that point, though, to be successful, any motion for an extension of time would now require a showing of excusable neglect.

MEMORANDUM OF DECISION - 6

properly communicate the deadline for timely filing to his clients, Trustee

emphasizes that Tolson knew of the deadline.  Trustee contends Tolson's

knowledge is imputed to his clients.  Finally, Trustee argues that Debtors'

untimely receipt of a copy of the Court's decision from their counsel is not

excusable neglect.  Thus, Trustee argues, Debtors' motion to extend time to

appeal should be denied.

### *Discussion*

Upon entry of a judgment, order, or decree by a bankruptcy court, a

party has fourteen days to file a notice of appeal.  Rule 8002(a).  If unable to

meet that deadline, a party may move for an extension of time to file the

notice of appeal.  Rule 8002(c).  While the deadline for filing a request to

extend the appeal time is also fourteen days from the entry of the order to

be appealed, the Rules contain a limited, twenty-one day window[5] during

which the bankruptcy court may grant a late-filed motion to extend time,

provided the moving party demonstrates that its neglect in not filing a

---

[5]  The twenty-one day period begins to run upon "the expiration of the
time for filing a notice of appeal."  Rule 8002(c)(2).

MEMORANDUM OF DECISION - 7

timely motion was "excusable."  Rule 8002(c)(2).

The party requesting an extension of time bears the burden of proving the existence of excusable neglect.  *Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 631 (9th Cir. BAP 1995).  A trial court exercises discretion in deciding whether to grant a motion to extend time for excusable neglect.  *Pincay v. Andrews*, 389 F.3d 853, 858–59 (9th Cir. 2004) (en banc).

In the Ninth Circuit, courts should apply the factors established by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), in construing "excusable neglect."  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).  This includes excusable neglect in the context of Rule 8002(c).  *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 185–86 (9th Cir. BAP 2002) (citing *In re Cahn*, 188 B.R. at 631–32 ).  Thus, the factors to be considered by the Court in deciding whether Debtors have shown excusable neglect are (1) the danger of prejudice to the other party; (2) the length of the delay caused by the neglect, and its potential impact on judicial proceedings; (3) the reason for the delay,

MEMORANDUM OF DECISION - 8

including whether it was within the movant's reasonable control; and (4)

whether the movant acted in good faith.  *Pioneer Inv. Servs. Co.*, 507 U.S. at

395.  At the same time, courts are to "equitably consider all relevant

circumstances surrounding a party's (or its lawyer's), errors or omissions."

*In re Becker*, 393 B.R. 233, 237 (Bankr. D. Idaho 2008) (citing *Pincay*, 389 F.3d

at 856, 860).

1.   <u>Danger of Prejudice</u>.

Trustee asserts that the bankruptcy estate will be prejudiced if the

Court allows Debtors to file a notice of appeal.  Delay in resolving the

homestead issue, Trustee argues, potentially impacts his ability to

effectively market the Shoup Property.  Debtors, on the other hand,

contend that "an appeal to the BAP to get further analysis of some of the

issues the [C]ourt had to deal with concerning the homestead statutes in

Idaho would be helpful in understanding the rule of law as applied in this

instance."  Debtors' Brief in Support of Motion at 2, Dkt. No. 44.  The law

relied upon by the Court in issuing its January 17 Decision, however, is not

unsettled.

MEMORANDUM OF DECISION - 9

Trustee's objection to Debtors' homestead exemption was sustained because Debtors' 2000 homestead declaration was technically deficient. Since the 1800's, where an Idaho homestead statute's language is plain and unambiguous, compliance with the statute's requirements is necessary before a homestead is created.  *See Thorp v. Gugino (In re Thorp)*, 09.3 I.B.C.R. 90, 92 (D. Idaho 2009) (citing *Mellen v. McMannis*, 75 P. 98, 99–100 (Idaho 1904); *Burbank v. Kirby*, 55 P. 295, 296 (Idaho 1898) (finding that, where the homestead exemption statute requires a homestead declaration to be acknowledged in the same manner as a conveyance of real property, a homestead is not created if the declaration has an acknowledgment, but, due to an oversight on the part of the notary, it was not "acknowledged as required by statute")[6]; *see also In re Gardner*, 417 B.R. 616, 622 (Bankr. D. Idaho 2009) (finding that not filing a declaration of abandonment rendered a homestead declaration invalid); *In re Thorp*, 08.4 I.B.C.R. 172, 174–75

---

[6]  The homestead exemption statute still requires a declaration to be acknowledged in the same manner as a grant of real property.  *See* Idaho Code § 55-1004(5).  Debtors' 2000 homestead declaration did not have an acknowledgment; it had a jurat, which would not have been insufficient on a grant of real property.  January 17 Decision at 14, Dkt. No. 34.

MEMORANDUM OF DECISION - 10

(Bankr. D. Idaho 2008) (finding that a homestead declaration did not

establish a homestead because it omitted the statutory requirement of an

estimate of the premise's actual cash value, and a declaration of

abandonment was not filed); *In re Field*, 05.1 I.B.C.R. 11, 15 (Bankr. D. Idaho

2005) (finding that a declaration of nonabandonment did not satisfy the

statutory requirements of a homestead declaration because, for one reason,

it did not contain the proper statutory contents, such as an

acknowledgment).  An appeal by Debtors would face the significant

obstacle of overcoming the long-standing precedents in Idaho concerning

establishment of a homestead.  Moreover, the delay in allowing Debtors to

appeal could, potentially, impact Trustee's ability to maximize the value of

the Shoup Property for the bankruptcy estate.[7]  Therefore, the "prejudice"

factor weighs in favor of denying Debtors' motion to extend time.

---

[7]  While they have not expressly indicated, the Court presumes that,
pending appeal, Debtors would seek a stay prohibiting Trustee from selling the
Shoup Property.  *See* Rule 8005.  If Debtors were to consent to administration of
the Shoup Property by Trustee pending any appeal, the prejudice to the
bankruptcy estate would be lessened.  In taking that course, however, Debtors
may risk that the issue on appeal becomes moot.

MEMORANDUM OF DECISION - 11

2.    <u>Length of the Delay</u>.

The length of the delay, and its potential impact on judicial

proceedings, are minimal.  Debtors missed the deadline to file a timely

motion to extend time by four days.  While the delay associated with the

appeals process may impact the value that Trustee is able to recover from

the Shoup Property, the delay by Debtors in filing the motion to extend

time, in and of itself, has not significantly impacted Debtors' case.

3.    <u>Reason for the Delay</u>.

Simply put, Debtors have not shown that the reason for their tardy

filing was excusable.  While they continue to assert that the delay was due

to a "mail failure" or a "delay in mail communications," Debtors have not

shown what that delay or failure was.  *See* Debtors' Brief in Support of

Motion at 2–3, Dkt. No. 34.  Debtor's attorney indicated he put a copy of

the January 17 Decision in his assistant's box to be mailed out.  There is no

proof, nor even any argument, that the January 17 Decision ever made it

into the postal system.  In other words, Debtors have not proved the

decision was ever actually mailed to Debtors.  While Tolson insists "the

MEMORANDUM OF DECISION - 12

mail failure was not in the control of the debtor," Debtors have not

satisfied their burden of proving this is so.

In addition, it is clear that both Debtors and Tolson became aware of

the January 17 Decision well before the deadline to file a motion to extend

time to appeal.  Tolson, if not Debtors, also knew of the fourteen-day

window available to Debtors to file an appeal.

Even *pro se* parties are expected to know and comply with

procedural rules.  *See Briones*, 116 F.3d at 381 (quoting *Swimmer v. Internal*

*Revenue Serv.*, 811 F.2d 1343, 1345 (9th Cir. 1987) for the proposition that

"[i]gnorance of court rules does not constitute excusable neglect, even if the

litigant appears pro se").  Debtors cannot rely on a lack of knowledge of

the appeal period to justify the delay in their motion to extend time.

Because Debtors and their attorney were aware of the need to appeal

prior to the deadline, because they have not shown that the reason for their

neglect in filing a timely motion was beyond their control, and because

they have offered no other excusable justification for the delay, this factor,

too, weighs against granting the motion to extend time.

MEMORANDUM OF DECISION - 13

4.   <u>Bad Faith</u>.

There is no indication in the record that Debtors or Tolson acted in

bad faith.

### *Conclusion*

After considering all the relevant circumstances, the Court concludes

that Debtors have not shown their failure to file a timely motion to extend

time to appeal was due to excusable neglect.  In a separate order, Debtors'

motion to extend time to file a notice of appeal under Rule 8002(c) will be

denied.

Dated:  May 22, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 14